UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

      Plaintiff,                  Case No. 18-cr-20151

v.                             HON. MATTHEW F. LEITMAN
                                United States District Judge

JERELL CLEMENT,

      Defendant.

---

## UNITED STATES' RESPONSE OPPOSING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

Defendant, Jerell Clement was involved in a large scale wire fraud conspiracy. He pleaded guilty and was sentenced on September 19, 2019, to 36 months' imprisonment. The sentence was divided to 35 months on the underlying offense and 1 month consecutive for commission of the offense while on bond. (ECF No. 365, PageID 1389).

Clement began serving his current sentence on October 29, 2019. He now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The Court should deny Clement's motion because his release would pose a danger to the community and would be inconsistent with the factors in 18 U.S.C. § 3553(a).

1

Clement does not qualify for compassionate release because his offense and criminal history make him a danger to the community, which precludes release under USSG § 1B1.13(2), and because the § 3553(a) factors—which the Court must also consider under § 3582(c)(1)(A)—likewise do not support release.

The Bureau of Prisons has also taken significant steps to protect all inmates, including Clement, from Covid-19. Since January 2020, the Bureau of Prisons has implemented "a phased approach nationwide," implementing an increasingly strict protocol to minimize the virus's spread in its facilities. *Wilson v. Williams*, 961 F.3d 829, 833–34 (6th Cir. 2020). And the Bureau of Prisons has assessed its entire population to determine which inmates face the most risk from Covid-19, pose the least danger to public safety, and can safely be granted home confinement. As of August 13, 2020, this process has already resulted in over 7,000 inmates being placed on home confinement. *See* BOP Covid-19 Website. Especially given the Bureau of Prisons' efforts—and "the legitimate concerns about public safety" from releasing inmates who might "return to their criminal activities," *Wilson*, 961 F.3d at 845—the Court should deny Clement's motion for compassionate release.

2

## Background

Clement was involved in a large scale, multi-million dollar, wire fraud conspiracy that took place over several years in 39 different states. His personal involvement was from November 2016 through March 2018. Clement committed the offense on at least 85 occasions in 39 different states. He was personally responsible for a financial loss in excess of $250,000. Clement continued to participate in the fraud scheme while under the supervision of this Court. (PSR ¶s 20-21).

Clement has been involved in the criminal justice system for his entire adult life. He has several fraud convictions, as well as convictions for a weapons offense, drug offense, domestic violence, and assault. (PSR ¶s 38-68, 119). Clement has violated court orders of supervision including failing to appear on several occasions and new criminal conduct. In this case, he failed to appear for two hearings before this Court and continued to engage in fraudulent activity while on bond. (PSR ¶s 2, 21, 116, 119).

The probation department calculated Clement's advisory sentencing guideline range to be 46 to 57 months' which included enhancements for obstruction of justice and commission of an offense while on pretrial

release.  (PSR ¶s 23-24, 99).  Clement received a variance at sentencing and was sentenced to 36 months' imprisonment to be followed by 2 years of supervised release.  (ECF No. 365, PageID 1389-90).

Clement began serving his prison sentence on October 29, 2019, and is currently incarcerated at FCI Butner. He is 37years old, and his projected release date is July 31, 2021. (Attached Government's Exh 1). Clement has type I diabetes for which he takes insulin, hypertension that is controlled with medication and a history of charcot arthropathy. (Attached Government's Exh 2).

Clement previously requested compassionate release from the Bureau of Prisons and the government does not contest that he has exhausted his administrative remedies. (ECF No. 378-2, Attachment A to Def.'s Brief, PageID 1443-46).

## Argument

## I.   The Bureau of Prisons has responded to Covid-19 by protecting inmates.

### A.   The Bureau of Prisons' precautions have mitigated the risk from Covid-19 within its facilities.

The Bureau of Prisons has reacted quickly to confront Covid-19's spread within its facilities. *Wilson v. Williams*, 961 F.3d 829, 833–34 (6th Cir. 2020). For over almost a decade, the Bureau of Prisons has

4

maintained a detailed protocol for responding to a pandemic. Consistent with that protocol, the Bureau of Prisons began planning for Covid-19 in January 2020. *Wilson*, 961 F.3d at 833–34.

On March 13, 2020, the Bureau of Prisons started modifying its operations to implement its Covid-19 Action Plan and minimize the risk of Covid-19 transmission into and inside its facilities. *Id.*; *see* BOP Covid-19 Modified Operations Website. Since then, as the worldwide crisis has evolved, the Bureau of Prisons has repeatedly revised its plan. *Wilson*, 961 F.3d at 834. To stop the spread of the disease, the Bureau of Prisons has restricted inmate movement within and between facilities. *Id.* When new inmates arrive, asymptomatic inmates are placed in quarantine for a minimum of 14 days. *Id.* Symptomatic inmates are provided with medical evaluation and treatment and are isolated from other inmates until testing negative for Covid-19 or being cleared by medical staff under the CDC's criteria. *Id.*

Within its facilities, the Bureau of Prisons has "modified operations to maximize physical distancing, including staggering meal and recreation times, instating grab-and-go meals, and establishing quarantine and isolation procedures." *Id.* Staff and inmates are issued

5

face masks to wear in public areas. *See* [BOP FAQs: Correcting Myths and Misinformation](). Staff and contractors are screened for symptoms, and contractors are only permitted to access a facility at all if performing essential service. *Wilson*, 961 F.3d at 834. Social visits have been suspended to limit the number of people entering the facility and interacting with inmates. *Id.* But to ensure that relationships and communication are maintained throughout this disruption, the Bureau of Prisons has increased inmates' telephone allowance to 500 minutes per month. Legal visits are permitted on a case-by-case basis after the attorney has been screened for infection.

Like all other institutions, penal and otherwise, the Bureau of Prisons has not been able to eliminate the risks from Covid-19 completely, despite its best efforts. But the Bureau of Prisons' measures will help federal inmates remain protected from Covid-19 and ensure that they receive any required medical care during these difficult times.

## II.   The Court should deny Clement's motion for compassionate release.

Clement's motion for a reduced sentence should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir.

6

2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

First, compassionate release requires exhaustion. If a defendant moves for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the Bureau of Prisons or waiting 30 days from when the warden at his facility received his request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). And as the Sixth Circuit recently held, this statutory exhaustion requirement is mandatory. *Alam*, 960 F.3d at 832–36. The government does not contest that Clement has exhausted his administrative remedies.

*Second*, even if a defendant exhausts, he must show "extraordinary and compelling reasons" for compassionate release, and release must be "consistent with" the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A). As with the identical language in § 3582(c)(2), compliance with the policy statements incorporated by § 3582(c)(1)(A) is mandatory. *See Dillon v. United States*, 560 U.S. 817 (2010); *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014). To qualify, a defendant must have a medical condition, age-related issue, family circumstance, or other reason that satisfies the criteria in USSG § 1B1.13(1)(A) & cmt. n.1, and he must "not [be] a danger to the safety of any other person or to the community," USSG § 1B1.13(2). While the government does not contest that Clement's health issues are extraordinary and compelling reasons for release, the Court should not release Clement because he would be a danger to the community.

*Third*, even if a defendant is eligible for compassionate release, a district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. As at sentencing, those factors require the district court to consider the defendant's history and characteristics, the seriousness of the offense,

8

the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, and the protection of the public. 18 U.S.C. § 3553(a). Clement's release would be inconsistent with the factors in § 3553(a).

### A. Clement is not eligible for compassionate release under the mandatory criteria in USSG § 1B1.13.

Congress tasked the Sentencing Commission with "describ[ing] what should be considered extraordinary and compelling reasons for [a] sentence reduction" under § 3582(c)(1)(A), as well as developing "the criteria to be applied and a list of specific examples" for when release is permitted. 28 U.S.C. § 994(t). The compassionate-release statute thus permits a sentence reduction only when "consistent with" the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A).

Because the Sentencing Commission fulfilled Congress's directive in USSG § 1B1.13, compliance with that policy statement is mandatory for any defendant seeking compassionate release under § 3582(c)(1)(A). The Supreme Court has already reached the same conclusion for compliance with USSG § 1B1.10 under 18 U.S.C. § 3582(c)(2), based on the statutory language there. *Dillon v. United States*, 560 U.S. 817, 827 (2010). And the statutory language in § 3582(c)(1)(A) is identical to the

9

language in § 3582(c)(2). *Compare* § 3582(c)(1)(A) (requiring that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"), *with* § 3582(c)(2) (same). When Congress uses the same language in the same statute, it must be interpreted in the same way. *United States v. Marshall*, 954 F.3d 823, 830 (6th Cir. 2020). In both contexts, then, the Sentencing Commission's restraints "on a district court's sentence-reduction authority [are] absolute." *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014) (citing *Dillon*, 560 U.S. 817); *accord United States v. Saldana*, 807 F. App'x 816, 819–20 (10th Cir. 2020).

The First Step Act did not change that. It amended only *who* could move for compassionate release under § 3582(c)(1)(A). It did not amend the substantive requirements for release. *Saldana*, 807 F. App'x at 819–20. Section 1B1.13 remains binding.

Clement's medical records establish that he has medical conditions, which the CDC has confirmed are risk factors that place a person at increased risk of severe illness from Covid-19. *See* CDC Risk Factors (as updated). Given the heightened risk that Covid-19 poses to someone with those medical conditions, Clement has satisfied the first eligibility

10

threshold for compassionate release during the pandemic. *See* USSG

§ 1B1.13(1)(A) & cmt. n.1(A).

But Clement remains ineligible for compassionate release because he

is a danger to the community. Section 1B1.13(2) only permits release if

a "defendant is not a danger to the safety of any other person or to the

community, as provided in 18 U.S.C. § 3142(g)." As with the other

requirements in § 1B1.13, this prohibition on releasing dangerous

defendants applies to *anyone* seeking compassionate release. 18 U.S.C.

§ 3582(c)(1)(A) (requiring that release be "consistent with" § 1B1.13);

*United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020)

(confirming that a released defendant must "not represent a danger to

the safety of any other person or the community"). Although a court

must also evaluate the defendant's dangerousness when balancing the

§ 3553(a) factors, dangerousness alone is a per se bar to release under

USSG § 1B1.13(2). *United States v. Knight*, No. 15-20283, 2020 WL

3055987, at *3 (E.D. Mich. June 9, 2020); *United States v. Oliver*, No.

2:17-cr-20489, 2020 WL 2768852, at *7 (E.D. Mich. May 28, 2020).

An evaluation of dangerousness under § 3142(g)—which § 1B1.13(2)

references for its dangerousness determination—requires a

comprehensive view of community safety, "a broader construction than the mere danger of physical violence." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (per curiam). Indeed, even when considering *pretrial* detention under § 3142(g), "[t]he concept of a defendant's dangerousness encompasses more than merely the danger of harm involving physical violence." *United States v. Williams*, No. 20-1413, 2020 WL 4000854, at *1 (6th Cir. July 15, 2020) (citing *United States v. Vance*, 851 F.2d 166, 169–70 (6th Cir. 1988)). That reasoning applies even more strongly post-judgment, when the defendant's presumption of innocence has been displaced by a guilty plea or jury's verdict and when "the principle of finality" becomes "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989).

Section 1B1.13(2) is thus a significant hurdle to release. It bars the release of violent offenders. It bars the release of most drug dealers, "even without any indication that the defendant has engaged in violence." *United States v. Stone*, 608 F.3d 939, 947–48 & n.6 (6th Cir. 2010) ("[D]rug trafficking is a serious offense that, in itself, poses a danger to the community."); *Knight*, 2020 WL 3055987, at *3. It bars the release of defendants whose offenses involved minor victims or child

12

pornography. *See United States v. McGowan*, No. 20-1617, 2020 WL 3867515, at \*3 (6th Cir. July 8, 2020). It also bars the release of many "non-violent" offenders, such as defendants who were involved in serial or significant fraud schemes or otherwise present a danger to the community in some respect. *See Stone*, 608 F.3d at 948 n.7; *United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992) ("[D]anger may, at least in some cases, encompass pecuniary or economic harm."); *United States v. Israel*, No. 17-20366, 2017 WL 3084374, at \*5 (E.D. Mich. July 20, 2017) (recognizing that "economic harm may qualify as a danger" foreclosing release); *United States v. Persaud*, No. 05-CR-368, 2007 WL 1074906, at \*1 (N.D.N.Y. Apr. 5, 2007) (citations omitted) ("economic harm qualifies as a danger within the contemplation of the Bail Reform Act."); *United States v. Giordano*, 370 F. Supp. 2d 1256, 1270 (S.D. Fla. 2005) (citations omitted) ("There can be no question that an economic danger, like that posed by a serial defrauder, falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act.").

Adhering to § 1B1.13(2) is especially important given the current strain on society's first responders and the rise in certain types of crime

during the Covid-19 pandemic. Police departments in many cities have been stretched to their limits as officers have either contracted Covid-19 or been placed in quarantine. Some cities, including Detroit, have seen spikes in shootings and murders. Child sex predators have taken advantage of bored school-aged kids spending more time online. Covid-19-based fraud schemes have proliferated. Drug overdoses are skyrocketing. There are real risks to public safety right now, and those risks will only increase if our community is faced with a sudden influx of convicted defendants.

Because Clement's release would endanger the community, § 1B1.13(2) prohibits reducing his sentence under § 3582(c)(1)(A). Clement has a long and continuous criminal history dating back twenty years. (PSR ¶s 38-80). He has been unable to live in the community for any extended period of time without committing a new crime. Clement's prior record includes fraud offenses, a drug related conviction, a firearms offense, domestic violence and assault. (*Id.*). He has repeatedly violated supervision rather than making an effort to reform himself. Even while under the supervision of this Court, Clement failed to appear for two consecutive court hearings and

continued to commit new crimes.  Although uncharged, he also engaged in threatening behavior while on bond.  (PSR ¶ 71).

Because Clement's release would endanger the community, § 1B1.13(2) prohibits reducing his sentence under § 3582(c)(1)(A).

### C.     The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.

Even when an inmate has shown "extraordinary and compelling reasons" and demonstrated that he is not dangerous, he is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate.  *See United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020) ("The § 3553(a) factors . . . weigh against his request for compassionate release."); *United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *3–*5 (E.D. Mich. May 15, 2020) (holding that the "[d]efendant's circumstances do not warrant compassionate release . . . under 18 U.S.C. § 3553(a)"); *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *6 (E.D. Mich. May 15, 2020) (denying compassionate release because "the 18 U.S.C. § 3553(a) sentencing factors do not favor release"); *see also United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (upholding a district

15

court's denial of compassionate release based on the § 3553(a) factors). So even if the Court were to find Clement eligible for compassionate release, the § 3553(a) factors should still disqualify him.

Three sentencing factors are particularly relevant to Clement's request for compassionate release.  First, compassionate release would not adequately reflect the serious nature and circumstances of the offense.  Clement participated in a multi-million dollar fraud scheme for approximately 18 months.  He personally executed the scheme on at least 85 occasions in 13 different states.  His participation in the conspiracy was not merely opportune but rather a calculated and continual crime spree that was motivated by greed.  As the Court noted at the sentencing hearing, not only did defendant's conduct have a financial impact on Walmart, his crimes also negatively impacted a number of Walmart employees.  (PSR ¶ 118).  Innocent, hard-working individuals were accused of crimes, suffered job loss, and at least one employee was arrested and spent time in jail.  (*Id.*)  Compassionate release would not adequately reflect the seriousness of defendant's offense.

Second, compassionate release would undermine the goal of deterrence. The Bureau of Prisons has classified Clement as having a high risk of recidivism. (Attached Government's Exh 3). This is likely because of his prior criminal history and the fact that he committed crimes while on supervision. Clement was on bond in the case for only 8 days before he committed a new criminal offense. Clement's bond was revoked in April 2018 and he remained in custody until February 2019. Within three months of being released, he was accused of engaging in threatening behavior towards a YMCA employee. (PSR ¶ 12). Although not charged with a crime, Clement acknowledged a "heated conversation" with the individual. (PSR ¶ 71). As noted in the presentence investigation report, "deterrence is a major factor in this case. The defendant has been involved in the criminal justice system on a consistent basis since he was a juvenile." (PSR ¶ 119). He has violated this Court's order of release and even his "traumatic medical condition" has not curbed his temptation to engage in fraudulent activities. (*Id.*) Prior arrests, jail sentences, and other court's efforts to use alternatives to incarceration have not proven effective to deter Clement from being involved with the criminal justice system. He has

17

been in BOP custody since October 29, 2019 (approximately 9 months) and similar sentences have not been enough to deter Clement from criminal behavior. Clement should serve the full term of his sentence so there will be adequate deterrence to prevent him from slipping into new criminal conduct once he is released.

Finally, compassionate release would fail to protect the public from future crimes by this defendant. As discussed above, Clement has not yet shown that he can live in a community for any sustained period of time without committing a new crime. If Clement were to be released now, his track record shows that he probably would immediately return to criminal activity even while under this Court's supervision.

Clement has already received a variance from his advisory sentencing guidelines and balancing the § 3553(a) factors show that this Court should not further reduce Clement's sentence.

## III. If the Court were to grant Clement's motion, it should order a 14-day quarantine before release.

If the Court were inclined to grant Clement's motion despite the government's arguments above, the Court should order that he be subjected to a 14-day quarantine before release.

## Conclusion

Jerell Clement's motion should be denied.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

_s/ NANCY A. ABRAHAM_
Assistant United States Attorney
600 Church Street
Flint, MI  48502
(810) 766-5177

August 14, 2020

19

## ***CERTIFICATION OF SERVICE***

I hereby certify that on, August 14, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will electronically serve all ECF participants.

s/Jessica Stanton\
United States Attorney's Office